IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHELIA R. TAYLOR,                              §
                                               §
                        Plaintiff,             §
                                               §   Civil Action No. 3:16-CV-3341-D
VS.                                            §
                                               §
LEAR CORPORATION, et al.,                      §
                                               §
                        Defendants.            §

MEMORANDUM OPINION
AND ORDER

        In this employment discrimination action by plaintiff Shelia R. Taylor ("Taylor")

against defendants International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America, and Local Union 129 (collectively, "UAW"), and Lear

Corporation ("Lear"), UAW moves to strike Lear's first amended complaint ("amended

complaint"), and all three defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss the

amended complaint for failure to state a claim.  For the reasons that follow, the court denies

UAW's motion to strike, grants UAW's motion to dismiss, grants in part and denies in part

Lear's motion to dismiss, and grants Taylor leave to replead.

I

        Taylor is employed by Lear at its Arlington, Texas facility, and is a member of the

UAW.[1]  UAW and Lear are parties to a collective bargaining agreement ("CBA").

_____

        [1]In deciding defendants' Rule 12(b)(6) motions, the court construes Taylor's amended complaint in the light most favorable to her, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Taylor's favor.  *See, e.g., Lovick v.*

On December 4, 2015 Taylor filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that she was denied overtime in retaliation for her April 16, 2015 complaint of race and sex discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. On April 5, 2016 the EEOC dismissed Taylor's charge and issued a Notice of Right to Sue. On June 14, 2016 Taylor sued Lear and UAW in Case No. 3:16-CV-1583-L (Lindsay, J.), alleging claims under Title VII, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 1985. On October 7, 2016 Judge Lindsay dismissed Taylor's lawsuit without prejudice because of her failure to comply with a court order.  Taylor then filed the instant lawsuit on December 1, 2016.  On June 13, 2017 the court granted Taylor's motion for leave to amend her complaint, and ordered her to file her amended complaint within 28 days of the court's order. Taylor filed her amended complaint on July 17, 2017.

In the amended complaint, Taylor appears to allege claims for hostile work environment and retaliation under Title VII; discrete discrimination under the FLSA; "Negligent Training, Negligent Hiring," which "creat[ed] a hostile work environment in its workforce . . . [that was] 'severe and pervasive' and in violation of Title VII," Am. Compl.

---

*Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

¶ 25; and violation of § 301 of the LMRA.  UAW moves to strike Taylor's amended complaint on the ground that it is untimely,[2] and UAW and Lear each move to dismiss Taylor's amended complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  Taylor opposes the motions.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiff['s] amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and brackets omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a motion to dismiss under Rule 12(b)(6), plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S.

---

[2]Taylor's amended complaint was untimely, but because the six-day delay in filing the amended complaint has not prejudiced defendants or interfered with the decisional process of the court, the court denies UAW's motion to strike.  In the future, however, Taylor must comply with all court-ordered deadlines; her failure to do so may have adverse consequences, including, if appropriate, dismissal of this action.

at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)). In other words, defendants are not entitled to dismissal under Rule 12(b)(6) based on an affirmative defense unless Taylor "has pleaded [her]self out of court by admitting to all of the elements of the defense." *Id.* (quoting *Sivertson*, 2011 WL 4100958, at *3).

### III

The court begins with Taylor's claims for hostile work environment and retaliation brought under Title VII.[3]

---

[3]Taylor's amended complaint is difficult to understand. It is clear that Taylor intends to bring claims under Title VII for hostile work environment and retaliation, but it is unclear whether she intends to assert these claims against Lear, UAW, or both. In addition, Taylor pleads a claim for "Negligent Training, Negligent Hiring," in which she alleges, *inter alia*, that "the la[ck] of EEO training and hiring creating a hostile work environment in its workforce and employees advances plaintiff[']s belief that her discrimination is based on

A

UAW and Lear move to dismiss Taylor's Title VII claims on the grounds that she has failed to exhaust her administrative remedies and that any claims arising from the December 4, 2015 EEOC charge are time-barred.

1

"It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted [her] administrative remedies by filing a charge of discrimination with the EEOC." *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *3 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010). "This requirement serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

---

race. It is 'severe and pervasive' and in violation of Title VII[.]" Am. Compl. ¶ 25. Based on this language, the court assumes *arguendo* (for purposes of deciding defendants' motions to dismiss) that Taylor intended her "Negligent Training, Negligent Hiring" claim to allege a violation of Title VII.

Because this court treats exhaustion of administrative remedies in a Title VII case as an affirmative defense, *see Clemmer v. Irving Independent School District*, 2015 WL 1757358, at *3 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.), *aff'd on other grounds*, No. 16-10493 (5th Cir. May 19, 2017) (per curiam), defendants are not entitled to dismissal of Taylor's Title VII claims on this basis unless it appears from the face of the complaint that Taylor has *not* exhausted her administrative remedies. *Id.* The amended complaint[4] does not mention the filing of any charge with the EEOC or the receipt of a right to sue letter. Accordingly, with respect to her Title VII claims, the court cannot conclude that Taylor has pleaded herself out of court based on a failure to exhaust her administrative remedies. *See id.*[5]

2

The court next considers defendants' argument that Taylor's Title VII claims are time-barred. In deferral states such as Texas, an aggrieved party must file a charge of

_____

[4]Although in her complaint Taylor alleged that she "first filed her formal charge of discrimination (EEOC form 5) prepared by the [EEOC] in Dallas, Texas on December 4, 2015, detailing plaintiffs charge and sworn to by Plaintiff, which was within less than 180 days after the day plaintiff first learn of her rights," and also that "[t]he [EEOC] issued a Right to Sue Letter on April 5, 2016. Plaintiff now files this complaint within the 90 days of receiving the Right to Sue from the [EEOC]," Compl. ¶¶ 6, 7, in her amended complaint Taylor omits these allegations. The court in deciding defendants' Rule 12(b)(6) motions has considered only the allegations of Taylor's amended complaint.

[5]In response to defendants' motions to dismiss, Taylor maintains that she "has demonstrated that she has no need to exhaust[] her administrative remedies against the UAW." P. Br. 7. The court does not suggest by its decision at the Rule 12(b)(6) stage that Taylor was not required to exhaust her administrative remedies with respect to her Title VII claims (to the extent she intends to bring such claims).

-6-

discrimination with the EEOC within 300 days after the alleged unlawful practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1). If the EEOC dismisses this charge, it must "notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). A plaintiff has ninety days from the date she receives this notice from the EEOC, *i.e.*, a right-to-sue letter, to file a lawsuit. *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (per curiam) ("A plaintiff alleging employment discrimination must file a civil action no more than ninety days after she receives statutory notice of her right to sue from the EEOC."). The requirement that a plaintiff file a lawsuit within this ninety-day period is "strictly construed." *Taylor*, 296 F.3d at 379. "Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'" *Taylor*, 296 F.3d at 379 (citation omitted).

　　Taylor attached as an exhibit to her complaint[6] a copy of the EEOC's notice of right to sue letter, which is dated April 5, 2016.[7] She filed this lawsuit on December 1, 2016, which is 240 days after the EEOC mailed Taylor her right to sue letter. To the extent Taylor

---

[6]Although the court is not considering the *allegations* of Taylor's complaint in deciding defendants' motions to dismiss, *see supra* note 4, it is considering documents attached to the complaint that now comprise part of the record in this case.

[7]The court is aware that the 90-day tolling period is calculated based on the day the complainant *receives* the right-to-sue letter, not the day it is mailed. In this case, however, the few days that may have elapsed between when the EEOC mailed Taylor her right-to-sue letter and the date she received it are unlikely to make any difference because (excluding the time this suit was pending before Judge Lindsay) Taylor missed the 90-day deadline by 35 days.

intends to argue that the 90-day filing period was tolled while her case was pending before Judge Lindsay,[8] the Fifth Circuit has held in a per curiam opinion that the 90-day period for a Title VII claim is *not* tolled by the filing of a lawsuit that is later dismissed without prejudice for want of prosecution. *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir. 1988) (per curiam). But even assuming *arguendo* that the 90-day window *was* tolled during the 115 days[9] that Taylor's suit was pending before Judge Lindsay, Taylor still did not file this lawsuit within the 90-day window.[10]

Accordingly, to the extent Taylor intends to rely on her December 4, 2015 charge of discrimination and the EEOC's April 5, 2016 notice of right to sue to establish that she exhausted her administrative remedies with respect to her Title VII claims against Lear, the court grants Lear's motion to dismiss.[11]

B

UAW contends that Taylor's Title VII claims alleged against it—to the extent that Taylor intended to plead these claims against UAW—should be dismissed because Taylor

---

[8]Taylor does not include this argument in her response.

[9]The court takes judicial notice of the fact that Taylor's complaint in the prior lawsuit was filed on June 14, 2016 and that the lawsuit was dismissed on October 7, 2016.

[10]Taylor filed the prior suit 70 days after the EEOC mailed the right to sue letter and waited 55 days after Judge Lindsay dismissed her suit to file the instant action.

[11]Lear does not move to dismiss Taylor's Title VII claims on any ground other than Taylor's failure to exhaust administrative remedies (and the argument that any claims arising from the December 4, 2015 charge are untimely). Accordingly, to the extent that the court is *not* dismissing Taylor's Title VII claims against Lear on the ground that they are untimely, these claims remain pending against Lear.

has not pleaded that UAW (as opposed to Lear) is her employer and has not plausibly alleged a prima facie case of retaliation.[12]

1

Beginning with Taylor's hostile work environment claim, the court concludes that this claim is asserted only against Lear, not UAW.  Although in the amended complaint Taylor alleges in support of her hostile work environment claim that "*Defendants* [are] employer[s] within the meaning of Title VII," Am. Compl. ¶ 9 (emphasis added), and refers to the CBA as the "contract govern[ing] the interaction of the employer and that of its unionized employees," *id.* ¶ 11, her hostile work environment allegations appear to be directed only at her actual employer, Lear:

> [t]he managerial team of the defendant uninhibited unobjectionable and racial animus was repletely demonstrated, by the untamed verbal abuse of Mark Pedito the Mark Mc Sparren Quality Manager Plant who repeatedly failed to admonish the hostile action of the open and unbroken demoralizing culture posture such hostile assaults.  This unchecked hostile tenor continued from September 2015 at each 5S efficiency meeting and on or about October 2016.  Moreover, on several other instances during her shift the supervisor, knowingly and intentionally refused Ms. Taylor, who maintain seniority, to participate in any overtime scheduling, while openly threaten terms and condition of Ms. Taylor regarding her present position.

*Id.* ¶ 12.  In support of her hostile work environment claim, Taylor has not plausibly alleged that UAW was her employer or that UAW subjected her to a hostile work environment.

---

[12]Taylor does not specifically respond to this argument.

Accordingly, to the extent Taylor intends to assert her Title VII hostile work environment claim against UAW, the court grants UAW's motion to dismiss this claim.

2

The court turns next to Taylor's retaliation claim.  In deciding UAW's motion, the court assumes *arguendo* that Taylor has exhausted her administrative remedies against UAW and that she can bring this claim against a union that does not employ her.  Even with these assumptions, Taylor's Title VII retaliation claim against UAW is subject to dismissal because Taylor has not made a prima facie showing that UAW retaliated against her.

Taylor asserts a retaliation claim under § 2000e-3 of Title VII.  Because she relies on circumstantial evidence to support this claim, she must proceed under the familiar *McDonnell Douglas* burden shifting framework.  *See, e.g., Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework."); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).  As to the third element, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, ___U.S.____, 133 S.Ct. 2517, 2534 (2013).

Taylor alleges that she engaged in a protected activity ("attempting to seek redress under Title VII," Am. Compl. ¶ 16), but she has not pleaded that she was subjected to an adverse employment action as a result of that protected activity.   The only adverse employment actions the court can discern from the amended complaint are the agreement between Lear and UAW "to pay [Taylor] less than her earned wage," *id.* ¶ 13; Taylor's "loss of overtime pay," *id.* ¶ 15; Taylor's being "subject to [an] environment of dislike based [on] her race and her sex," *id.* ¶ 14, and Taylor's supervisor's "yelling, screaming and cursing her out in front of fellow worker Fred Williams, Alma Adame during [a] staff meeting," *id.* ¶ 16. Assuming *arguendo* that these allegations are sufficient to plausibly allege an adverse employment action for purposes of Taylor's Title VII retaliation claim, and also assuming *arguendo* that these allegations refer to actions taken by UAW (as opposed to Lear), Taylor has failed to plausibly allege any causal link (much less but-for causation) between any of these actions and the December 2015 filing of her Title VII complaint.[13]   Her conclusory allegation that "[t]his [(i.e., her supervisor 'yelling, screaming and cursing her out,')] occurred as a result of the plaintiff continued to file grievance[s] while attempting to seek redress under [Title VII]," *id.*, is insufficient to plausibly plead a causal link between the

_____

[13]To the extent Taylor contends that she was retaliated against for seeking redress under the LMRA or FLSA, or under the CBA, none of these activities is protected under Title VII and, accordingly, none can support a Title VII retaliation claim. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice *by this subchapter*." (emphasis added)).

protected activity and any adverse employment action.  *See, e.g., Warner v. Lear Corp.*, 2016 WL 339606, at *5 (N.D. Tex. Jan. 28, 2016) (Fitzwater, J.) (dismissing retaliation claim against union where plaintiff failed to allege adverse employment actions taken by union and alleged "only conclusory allegations, not any specific facts, showing the causal link between the protected activity and the adverse employment action.").

Accordingly, Taylor's Title VII retaliation claim against UAW is also dismissed.

IV

Taylor brings a claim for "discre[te] discrimination" under the FLSA, alleging that she was discriminated against because of her age and sex and that she was denied 36 hours of overtime.  Lear and UAW move to dismiss this claim on several grounds.

A

In her amended complaint, Taylor does not cite any particular statutory provision in support of her FLSA claim.[14]  Lear and UAW move to dismiss this claim to the extent she intends to plead a violation of 29 U.S.C. § 206(a) (requiring employers to pay minimum wage) or § 207(a)(1) (requiring employers to pay overtime at a rate not less than one and one-half times the regular rate of pay for hours worked over 40 per workweek).

Taylor alleges that she was "under[]paid," Am. Compl. ¶ 18, but she does not plead that she was paid less than the required minimum wage or that she was not properly

_____

[14]Although Taylor cites 29 U.S.C. § 216b in support of her "Negligent Training, Negligent Hiring" claim, this section applies only to overtime work performed before July 20, 1949.

compensated for overtime work.  Accordingly, to the extent Taylor intends to plead a claim under § 206 or § 207 against either UAW or Lear, the court grants defendants' motions and dismisses this claim.  *See, e.g., Valcho v. Dall. Cty. Hosp. Dist.*, 658 F.Supp.2d 802, 811 (N.D. Tex. 2009) (Fitzwater, C.J.) ("Claims for unpaid straight-time wages that do not implicate the minimum wage or overtime pay requirements are generally not cognizable under the FLSA." (citing *Green v. Dall. Cnty. Schs.*, 2005 WL 1630032, at *3 (N.D. Tex. July 6, 2005) (Solis, J.))).[15]

B

Lear and UAW also move to dismiss Taylor's FLSA claim to the extent she intends to plead an FLSA retaliation claim under 29 U.S.C. § 215(a)(3).  Taylor's FLSA retaliation claim is analyzed using the *McDonnell Douglas* burden-shifting framework discussed above. *See supra* § III(B)(2).  As with Taylor's Title VII retaliation claim, a plaintiff bringing an FLSA retaliation claim must demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. Taylor has failed to plausibly allege a prima facie case.

Taylor appears to assert that she filed a grievance (signed by Union committee person

---

[15]In addition, Taylor has failed to plausibly allege that UAW was or was acting as her employer, as defined by the statute.  *See* 29 U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, *but does not include any labor union (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.*" (emphasis added)).

Christopher Baker) on September 17, 2015 based on her belief that she was being paid less than her Caucasian male counterpart.  She also alleges that she "repetitively protested of the unjust actions, loss of overtime pay and hostile environment." Am. Compl. ¶ 15.  Assuming *arguendo* that these allegations sufficiently allege protected activity under the FLSA, Taylor has failed to plead any adverse employment action that resulted from the protected activity. Although she alleges that Lear and UAW[16] created a hostile work environment by denying Taylor a total of 36 hours overtime, she does not contend that any causal link existed between her September 17, 2015 grievance and the denial of overtime.  Accordingly, the court grants defendants' motion to dismiss Taylor's FLSA retaliation claim (assuming that Taylor intends to bring such a claim) on the ground that Taylor has failed to plausibly allege this claim.

## C

Lear contends that Taylor's allegation of intentional discrimination "because of her age and sex in clear violation of the fair labor standards act" fails to state a claim under the FLSA because the FLSA does not prohibit discrimination on the basis of age or sex.  Lear Br. 6.  Because the Equal Pay Act of 1963 ("EPA") prohibits discrimination in pay on the basis of sex, and because the EPA is incorporated into the FLSA, *see* 29 U.S.C. § 206(d), the court declines to dismiss Taylor's claim based on the argument that the FLSA does not prohibit discrimination based on sex.  Instead, the court will consider whether Taylor has

---

[16]Taylor pleads that a hostile work environment "was further created by Lear Corporation and its co-defendant UAW, when repeatedly denying the plaintiff . . . a total of some 36 hours overtime." Am. Compl. ¶ 20.  She fails to explain, however, how UAW, which was *not* her employer, could have denied her overtime.

pleaded a plausible EPA claim.

The EPA prohibits an employer from discriminating between employees on the basis

of sex by

> paying wages to employees [in a covered establishment] at a rate
> less than the rate at which he pays wages to employees of the
> opposite sex in such establishment for equal work on jobs the
> performance of which requires equal skill, effort, and
> responsibility, and which are performed under similar working
> conditions, except where such payment is made pursuant to (i)
> a seniority system; (ii) a merit system; (iii) a system which
> measures earnings by quantity or quality of production; or (iv)
> a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).  To establish a prima facie case under the EPA, a plaintiff must show

that: (1) her employer is subject to the EPA; (2) she performed work in a position requiring

equal skill, effort, and responsibility under similar working conditions; and (3) she was paid

less than the employee of the opposite sex providing the basis of comparison.  *Fields v.*

*Stephen F. Austin State Univ.*, 611 Fed. Appx. 830, 831-32 (5th Cir. 2015) (per curiam)

(citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).  "'Once a plaintiff has made

her prima facie case by showing that an employer compensates employees differently for

equal work, the burden shifts to the defendant to' show by a preponderance of the evidence

that the differential in pay was made pursuant to one of the four enumerated exceptions."

*King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011) (quoting *Siler-Khodr*

*v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001)).

Taylor complains generally of "clear essential divergent pay of the plaintiff (under

paid), juxtapose to the white male counterpart which is innate from the underlying historical

racial animus, from the quality Plant Manager, Marc Mc Sparren." Am. Compl. ¶ 18.  She

alleges that

> Kevin Miller also intentionally discriminated against Plaintiff
> because of her age and her sex in clear violation of the [FLSA].
> When failing to "pay Taylor the same as a white male," Danial
> Laferty when she worked not only first shift scape and her shift
> who was given overtime, even though she was junior to the
> plaintiff.

*Id.* ¶ 19.  Assuming that Danial Laferty ("Laferty") is a male, Taylor has not alleged that she

and Laferty performed work in a position requiring equal skill, effort, and responsibility

under similar working conditions.  Her allegation that she was paid less than Laferty is

insufficient of itself to plausibly allege an EPA claim.  Accordingly, assuming *arguendo* that

Taylor intends to bring an EPA claim (she does not mention the EPA in her amended

complaint or cite to 29 U.S.C. § 206(d)), the court dismisses this claim as to UAW and Lear.

V

The court now turns to Taylor's hybrid § 301 claim under the LMRA for breach of

the CBA and breach of the duty of fair representation.

A

"A § 301 breach of contract and fair representation suit comprises two distinct causes

of action, one against the employer, and the other against the union." *Williams v. Simmons

Co.*, 185 F.Supp.2d 665, 675 (N.D. Tex. 2001) (Solis, J.) (citing *Daigle v. Gulf State Utils.

Co.*, 794 F.2d 974, 977 (5th Cir. 1986)).  Section 301 of the LMRA "provides an employee

with a federal cause of action against his employer for breach of their collective bargaining

agreement." *Id.* (citing 29 U.S.C. § 185(a)).  "The suit against the union for breach of the duty of fair representation is implied under the scheme of the [NLRA]." *Id.* (citing *Daigle*, 794 F.2d at 977 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983))). "The two causes of action are 'inextricably interdependent,' and have come to be known as a 'hybrid' § 301/duty of fair representation suit."  *Id.* (citing *Daigle*, 794 F.2d at 977); *see also Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 850-51 (5th Cir. 1989).

B

Defendants contend, *inter alia*, that Taylor has failed to state a plausible § 301 hybrid claim because she does not allege any facts to support the claim that UAW breached the duty of fair representation.

1

The duty of fair representation imposes an obligation on a union to "investigate a grievance in good faith" and "prosecute a grievance 'with reasonable diligence unless it decides in good faith that the grievance lacked merit or for some other reason should not be pursued.'"  *Landry*, 880 F.2d at 852 (quoting *Hammons v. Adams*, 783 F.2d 597, 602 (5th Cir. 1986)) (citing *Abilene Sheet Metal, Inc. v. NLRB*, 619 F.2d 332, 347 (5th Cir. 1980)). But "[a]n employee has no absolute right to have his grievance taken to arbitration or to any other level of the grievance process." *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 191 (1967); *Turner v. Air Transp. Dispatchers Ass'n*, 468 F.2d 297, 300 (5th Cir. 1972)).  "Instead, a breach of the duty of fair representation occurs 'only when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'"  *Id.*

(quoting *Vaca*, 386 U.S. at 190).  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).  "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."  *Marquez v. Screen Actors Guild, Inc*., 525 U.S. 33, 45-46 (1998).  "A union does not breach its duty of fair representation, however, through simple negligence or a mistake in judgment."  *Landry*, 880 F.2d at 852 (citing *Vaca*, 386 U.S. at 192-93).

2

Taylor alleges that Lear and UAW reached an agreement "to pay [her] less than her earned wage as complained of [and that] they agreed while knowing it was a violation to pay her less compensation for services performed as a material handler."  Am. Compl. ¶ 13.  She further asserts, in support of her hybrid § 301 claim:

> because of the suspect Union action by complying with the plaintiff overtime grievance which remain arbitrary, capricious and without foundation their collaborative efforts in resolving the FLSA settlement is in violation of the Hybrid § 301.

> Plaintiff Taylor raised her failure to represent issues in grievances filed:

> > (1) the UAW Local 129 breached its Duty of Fair Representation (DFR) when negotiating her overtime pay grievances by simply agreeing with Lear to pay the plaintiff less pay, while knowingly, intentionally and deliberately

-18-

> hindering any and all further over time for the
> plaintiff which is against the COB.
>
> (2) Lear and UAW colluded to not permit the
> Plaintiff us[e] of the collective bargaining
> agreement CBO, section Letter of Understanding
> # 1 Overtime Distribution Groups Zone 2:
> Materials; in addition to Letter of Understanding
> # 2 Overtime Distribution.  The plaintiff base on
> her grievance failure received her rightful and
> earned pay on the Union.   According the
> presuppose settlement for the plaintiff give the
> idea for less pay is and was arbitrary,
> discriminatory, and in bad faith.  It is the but for
> causal connection between wrongful conduct and
> the plaintiff's economic injuries.

Am. Compl. ¶¶ 26-27 (paragraph numbering omitted).

Taylor fails to allege sufficient facts to state a plausible claim on which relief can be granted.  Other than her conclusory allegations, Taylor does not plead any facts that permit the court to draw the reasonable inference that UAW's conduct was "arbitrary, discriminatory, or in bad faith."  *Landry*, 880 F.2d at 852; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).  The mere fact that UAW settled Taylor's overtime grievances without her input and by "providing her with less pay," P. Br. 11, does not permit the court to reasonably draw such an inference.  This is so because "[a]n employee has no absolute right to have [her] grievance taken to arbitration or to any other level of the grievance process." *Landry*, 880 F.2d at 852 (citations omitted).  Additionally, a union "is not required to inform or allow the employee to participate in settlements." *Sawyer v. Am.*

*Postal Workers Union, AFL-CIO*, 2011 WL 6029925, at \*4 (N.D. Tex. Nov. 30, 2011) (Lindsay, J.) (citing *Vaca*, 386 U.S. at 191). Finally, the fact that as a result of the Union's negotiations with Lear, Taylor received "less pay," P. Br. 11, is alone insufficient to support the reasonable inference that UAW's conduct was "arbitrary, discriminatory, or in bad faith." *Landry*, 880 F.2d at 852. Accordingly, Taylor's § 301 hybrid claim against UAW is dismissed.

C

Taylor has also failed to state a plausible § 301 hybrid claim because she does not allege any facts that enable the court to draw the reasonable inference that Lear breached the CBA. Taylor alleges that defendants' conduct "is against the C[BA]," and that Lear and UAW "colluded to not permit the Plaintiff us[e] of the collective bargaining agreement." Am. Compl. ¶ 27. She also asserts that she and UAW "charged management violation of Collective Bargaining Agreement Article 1, 8," *id.* ¶ 14, and that she protested the "loss of overtime pay" and "possible violation Article 1, 16, and 14," *id.* ¶ 15. Other than these conclusory assertions, however, Taylor does not allege *how* Lear breached any of the referenced provisions of the CBA. *See Warner*, 2016 WL 339606, at \*4 (dismissing § 301 hybrid action against UAW and Local 129 because, *inter alia*, plaintiff made only conclusory allegations and "[did] not allege how Lear breached the CBA or what provision of the CBA was breached."). Accordingly, Taylor's § 301 hybrid claim against UAW and Lear is dismissed.

VI

Finally, the court considers Taylor's "Negligent Hiring, Negligent Training" claim.

A

Lear moves to dismiss this claim on the ground that, to the extent Taylor is actually alleging a claim under Title VII, she has not exhausted her administrative remedies, and to the extent she is attempting to state a common law claim for negligent hiring or negligent training, the claim is preempted by the Texas Commission on Human Rights Act. UAW moves to dismiss this claim on the ground, *inter alia*, that, to the extent Taylor is asserting that some purported failure to train supports one or more of her statutory claims, she has not stated this assertion with sufficient specificity and clarity to survive dismissal.

In her response, Taylor contends, *inter alia*, that defendants have deprived her of her Fourth and Fifth Amendment rights by using excessive and abusive and retaliatory action in the course of employment and by failing to provide supervision and/or proper training to prevent such incidents of excessive discrimination; that Lear and UAW are liable under 42 U.S.C. § 1983 for failing to supervise and train their managers and supervisors and union representatives and for overlooking and covering up management and employees' misconduct; that this course of conduct reflects a policy, practice, custom, and procedure authorizing and allowing the use of excessive abuse that violated Taylor's civil rights; that Lear's racial animus is part of its corporate culture; and that during the negotiation of Taylor's grievances, Taylor's supervisor made it known that he would make Taylor's working environment "so 'miserable that she would have to leave,'" P. Br. 11.

-21-

B

To the extent Taylor intended her "Negligent Hiring, Negligent Training" claim  to

plead a claim under 42 U.S.C. § 1983 based on the deprivation of her Fourth and Fifth

Amendment rights, the court grants defendants' motion to dismiss this claim.  Assuming

*arguendo* that Taylor has actually pleaded a § 1983 claim in her amended complaint—she

has not—this claim would nonetheless be subject to dismissal because§ 1983 applies only

to state actors, and there is no suggestion that either Lear or UAW is a state actor.  *See, e.g.,*

*Richardson v. Skyline Prop.*, 2014 WL 4817619, at *2 (N.D. Tex. Sept. 2, 2014) (Horan, J.)

("[O]nly 'state actors' may[]be sued for federal civil rights violations under 42 U.S.C. §

1983."), *rec. adopted*, 2014 WL 4817619, at *1 (N.D. Tex. Sept. 29, 2014) (Fitzwater, C.J.);

*see also Hall v. Continental Airlines, Inc.*, 252 Fed. Appx. 650, 653 n.2 (5th Cir. 2007) (per

curiam) (holding that district court properly dismissed § 1983 claim because plaintiff did not

allege discriminatory behavior by state actor).  To the extent the allegations in Taylor's

"Negligent Hiring, Negligent Training" claim are intended merely to supplement the

allegations in her Title VII claims, the court for the reasons explained above, *see supra* § III,

has dismissed Taylor's Title VII claims asserted against UAW and has dismissed, in part, the

Title VII claims asserted against Lear.

VII

Although the court is granting UAW's motion to dismiss and granting in part Lear's

motion to dismiss, it will permit Taylor to replead.  "[D]istrict courts often afford plaintiffs

at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is

clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (citation omitted). Because Taylor has not stated that she cannot, or is unwilling to, cure the defects that the court has identified, the court grants her 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

*   *   *

Accordingly, for the reasons explained, UAW's motion to strike is denied, UAW's motion to dismiss is granted, Lear's motion to dismiss is granted in part and denied in part, and Taylor is granted leave to replead.

**SO ORDERED**.

December 8, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE